UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN A. & KATHY STEPNIAK,

                      Plaintiffs,

v.

UNITED MATERIALS, LLC,

                      Defendant.
_____

**REPORT AND RECOMMENDATION**

03-CV-0569A(M)

       This case was referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings, including preparation of a Report and Recommendation on dispositive motions [51].[1] Before me is plaintiffs' cross-motion for summary judgment [30]. Oral argument was held on July 2, 2009, and I permitted the parties to submit post-argument briefs [65, 66]. For the following reasons, I recommend that plaintiffs' motion be DENIED, and that their second cause of action be DISMISSED, without prejudice.

## FACTUAL BACKGROUND

       Defendant operates a facility for the manufacture and sale of concrete products at 561 Pavement Road, Lancaster, New York. Complaint [1], ¶6.[2] On August 14, 2000 the New York State Department of Environmental Conservation ("DEC") conducted an inspection of defendant's premises as a result of a complaint. Seeger Affidavit [30-2], ¶12. DEC found that "due to inadequate housekeeping, a stockpile of flyash was washing off the property with

---

[1] Bracketed references are to CM/ECF docket entries.

[2] Although defendant has moved its corporate headquarters to the Town of Wheatfield, New York, it still maintains its plant at the site in Lancaster, New York. Saltarelli Affirmation [58], ¶3.

stormwater runoff and entering a roadside drainage ditch which leads to nearby Ellicott Creek, a Class B protected water body." Seeger Affidavit [30-2], Ex B. As a result, defendant obtained a permit for the discharge of fly ash from its property on October 2, 2000. Id. at Ex. C.

In response to plaintiffs' citizen suit notice,[3] DEC stated, in relevant part:

"On August 14, 2000 the Department responded to a complaint from your client, John Stepniak, regarding the discharge of coal fly ash from UM to Ellicott Creek. As a result of this inspection UM relocated the coal flyash stockpile. The Department is unaware of any discharges from the stockpile since the relocation. In addition, as of October 2, 2000, UM's storm water discharges have been authorized pursuant to the State's General Storm Water Permit . . . . Lastly, please note that the Department believes that, by definition, the coal fly ash is not a hazardous waste, and not a waste material since UM uses it as a raw material in a product it manufactures. Therefore, the Department believes that RCRA is not applicable to this matter." Answer [13], Ex. A.

In their motion for summary judgment, plaintiffs allege that the discharge of coal fly ash from defendant's property affected two parcels of property they owned along Ellicott Creek. Stepniak Affidavit [30-6], ¶4. Although they concede that defendant attempted to clean up their property, they allege that it did not remediate the contamination, causing them to undertake their own cleanup efforts. Id. at ¶22. They argue that they expended $1,200 and numerous hours of work to remedy the loss of landscaping caused by the coal fly ash deposited at their residence at 592 Pavement Road, which they eventually sold in June 2004. Id., ¶¶13-27. Plaintiffs also own a 3.3 acre developable lot that allegedly remains contaminated with coal fly ash. Id., ¶29.

---

[3] "The 60-day notice requirement of 33 U.S.C. § 1365(b) is a mandatory condition precedent to the filing of a citizen suit under the Clean Water Act." National Environmental Foundation v. ABC Rail Corporation, 926 F.2d 1096, 1097 (11th Cir.1991).

**PROCEDURAL BACKGROUND**

Plaintiffs commenced this action on July 7, 2003, alleging that defendant violated the Clean Water Act ("CWA"), 33 U.S.C. §§1311 and 1344, by discharging fill material into a tributary to Ellicott Creek on Pavement Road in the Town of Lancaster (Complaint [1], ¶¶19-33), and RCRA, 42 U.S.C. §6945, by engaging in the open dumping of solid waste at the same location. Id. at ¶¶ 34-39. The complaint seeks injunctive relief, civil penalties and attorney's fees. Complaint [1], pp. 9 - 10.

Following discovery, the parties cross-moved for summary judgment [27, 30]. I recommended that defendant's motion for summary judgment be denied due to its failure to comply with the Local Rules. Report and Recommendation dated August 13, 2007 [36], pp. 3-4. Because plaintiffs' complaint alleged that they only owned one parcel (592 Pavement Road), which they later sold, I concluded that plaintiffs had failed to eliminate any issue as to their continued standing to maintain this action, and recommended that their cross motion for summary judgment be denied. Id. at pp. 4-7. I also directed the parties to address the issue of plaintiffs' continued standing to maintain the claims alleged in the complaint.

After reviewing the parties' submissions, I issued a Supplemental Report and Recommendation recommending that because the basis for standing alleged in the complaint (the ownership of 592 Pavement Road) no longer existed, plaintiffs' complaint should be dismissed without prejudice for lack of subject matter jurisdiction [43]. Judge Arcara adopted my recommendation and dismissed the complaint [45]. On January 8, 2009 the Second Circuit vacated the dismissal and remanded the case for further proceedings [50].

Upon remand, I advised the parties that although defendant initially failed to respond to plaintiffs' cross-motion for summary judgment, I would treat defendant's motion for summary judgment [27] as its opposition to plaintiffs' cross-motion for summary judgment. I also provided the parties with the opportunity to supplement their papers by updating the factual and legal basis for their respective positions. May 4, 2009 Text Order [54].

## ANALYSIS

**A.     Summary Judgment Standard**

The standard to be applied on a motion for summary judgment in this Circuit is well-settled. " 'Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.]  Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party.' " Ford v. Reynolds, 316 F. 3d 351, 354 (2d Cir. 2003).

B.      **Plaintiffs' First Cause of Action (Violation of the CWA)**

The CWA "prohibits 'discharge' of 'any pollutant' into 'navigable waters' without a permit issued by the [EPA] under the . . . [NPDES] . . . or under a . . . [SPDES]". No Spray Coalition, Inc. v. City of New York, 351 F. 3d 602, 604 (2d Cir. 2003). Citizen suits are permitted under the CWA. See 33 U.S.C. §1365(a).

"There are two permitting provisions of the Clean Water Act that are relevant . . . . : (1) Section 402 of the Clean Water Act, 33 U.S.C. §1342, which relates to the 'discharge of a pollutant'; and (2) Section 404, 33 U.S.C. §1344, which relates to the discharge of 'dredged or fill material.'" Peconic Baykeeper, Inc. v. Suffolk County, 585 F. Supp. 2d 377, 412 (E.D.N.Y. 2008).

"Section 402 of the Clean Water Act, 33 U.S.C. §1342, establishes the 'National Pollutant Discharge Elimination System,' '[T]he NPDES requires dischargers to obtain permits that place limits on the type and quantity of pollutants that can be released into the Nation's waters.' . . . . In addition to federally-issued permits, Congress provided authority for States to issue NPDES permits for discharge into waters within its jurisdiction . . . 33 U.S.C. §1251(b). New York created the 'state pollutant discharge elimination system' in direct compliance with the Clean Water Act. See N.Y. Envir. Conserv. Law §17-0801 (McKinney 2006) (effective 1973). The SPDES program is administered by the New York State Department of Environmental Conservation. Discharges of pollutants into waters that are within the limitations imposed by the NPDES and SPDES permits comply with the Act. 33 U.S.C. §1342(k)." Id.

"Section 404 of the Clean Water Act, 33 U.S.C. §1344, relates specifically to 'permits for [the discharge of] dredged or fill material' into waters of the United States. This section authorizes the 'Secretary of the Army, acting through the Chief of Engineers,' to issue permits for 'the discharge of dredged or fill material into the navigable waters at specified disposal sites.' 33 U.S.C. §1344(a), (d)." Id. at 413. "If a person discharges fill material into U.S. waters without a §404 permit or without qualifying for one of the permit exemptions, that person violates the CWA." Swinomish Indian Tribal Community v. Skagit County Dike Dist. No. 22, 2008 WL 6150419, *4 (W.D.Wash. 2008).

Because it is undisputed that defendant obtained a SPDES as of October 2, 2000, thereby arguably being in compliance with Section 402 of the CWA, plaintiffs instead argue that defendant violated Section 404 of the CWA, 33 U.S.C. 1344, by discharging coal ash, a fill material, without a permit. Complaint [1], ¶33; Plaintiffs' Memorandum of Law [11], p. 7.

Defendant responds that "plaintiffs have not demonstrated since 2001 that there continues to be a problem with the discharge of coal fly ash." Defendant's Supplemental Memorandum of Law [56], p. 2. However, plaintiffs argue that the "continued presence of illegally deposited fill constitutes a continuing violation of the Clean Water Act". Seeger Affidavit [30-2], ¶20. The CWA "requires a citizen-plaintiff to 'allege a state of either continuous or intermittent violation - that is, a reasonable likelihood that a past polluter will continue to pollute in the future.'" Connecticut Coastal Fishermen's Association v. Remington Arms Co., Inc., 989 F. 2d 1305, 1311 (2d Cir. 1993).

The weight of authority supports plaintiffs' position that the continued presence of fill material constitutes a continuing violation. *See* Swinomish Indian Tribal Community,

supra, 2008 WL 6150419 at *4 ("The ongoing presence of fill materials without a permit represents a continuing violation of the CWA."); Atlantic States Legal Foundation, Inc. v. Hamelin, 182 F. Supp. 2d 235, 248 n. 20 (N.D.N.Y. 2001)(citing cases); Greenfield Mills, Inc. v. Goss, 2005 WL 1563433, *3 (N.D.Ind. 2005) (citing cases).

However, plaintiffs have failed to establish, as a matter of law, that a discharge of fill materials occurred in violation of the CWA. "The term fill material means material placed in waters of the United States where the material has the effect of . . . [c]hanging the bottom elevation of any portion of a water of the United States." 33 C.F.R. §323.2(e)(1). Plaintiffs argue that "the drainage ditch/intermittent stream is . . . navigable waters within the meaning of the Clean Water Act. United States v. Edison, 108 F. 3d 1336 (11th Cir. 1997)."[4] Statement of Undisputed Facts [30-10], ¶19. This is a legal argument which "belong[s] in briefs, not Rule 56.1 statements, and so [is] disregarded in determining whether there are genuine issues of material fact." Alliance Security Products, Inc. v. Fleming Co., 471 F. Supp. 2d 452, 454 (S.D.N.Y. 2007). In any event, it is not accompanied by a citation to admissible evidence, as required by Local Rule 56.1(d).

Plaintiffs' reliance on Edison, supra, is misplaced. *See* Rapanos v. United States, 547 U.S. 715 (2006), in which a plurality of the Court held that "'the waters of the United States' includes only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic features' that are described in ordinary parlance as 'streams, . . .

---

[4] Although plaintiffs argue that the drainage ditch is a *navigable water,* "the term fill material means material placed in *waters of the United States* where the material has the effect of . . . [c]hanging the bottom elevation of any portion *of a water of the United States*." 33 C.F.R. § 323.2(e)(1) (emphasis added). "Navigable waters of the United States" are defined in 33 C.F.R. Part 329, whereas "waters of the United States" are defined in 33 C.F.R. Part 328.

oceans, rivers, [and] lakes.' . . . The phrase does not include channels through which water flows intermittently or ephemerally, or channels that periodically provide drainage for rainfall." 547 U.S. at 739. In fact, the December 2, 2008 guidance document prepared by the United States Environmental Protection Agency/United States Army Corps of Engineers in the wake of Rapanos states that those agencies will "generally will not assert jurisdiction over . . . ditches (including roadside ditches) excavated wholly in and draining uplands and that do not carry a relatively permanent flow of water." Seeger Affirmation [55], Ex. B, p. 1.

      The only body of water which plaintiffs allege experienced a change in bottom elevation as a result of the discharge of the coal ash is the "highway ditch". *See* Statement of Undisputed Facts [30-10], ¶21. Plaintiffs rely on the complaint's allegation that "[t]his highway ditch . . . constitutes a stream. It has running water throughout most of the year" (Complaint, [1], ¶11). Plaintiffs' Supplemental Memorandum of Law [55-3], p. 4. However, "allegations in a complaint are not evidence". Welch-Rubin v. Sandals Corp., 2004 WL 2472280, *1 (D.Conn. 2004).

      Plaintiffs also argue that defendant admitted the truth of paragraph 11 of the complaint, which alleges that "[t]his unnamed perennial and/or intermittent flowing stream is a tributary of Ellicott Creek." *See* Plaintiffs' Supplemental Memorandum of Law [55-3], p. 4. However, defendant denies information sufficient to form a belief as to paragraph 11 of the complaint (defendant's answer [13], second paragraph), which "has the effect of a denial" under Rule 8(b)(5). Thus, based on the record before me, I cannot conclude as a matter of law that the drainage ditch constitutes "waters of the United States".

I also do not find that plaintiffs have established as a matter of law that coal fly ash constitutes "fill material" under the CWA. As previously discussed, "the term fill material means material placed in waters of the United States where the material has the effect of . . . [c]hanging the bottom elevation of any portion of a water of the United States." 33 C.F.R. §323.2(e)(1). The only evidence submitted by plaintiffs in support of this allegation is the unsubstantiated statement in plaintiff John Stepniak's Affidavit that "[t]his solid waste changed the bottom elevation of the highway ditch". [30-6], ¶9. However, there is no support for this statement.

Because I do not find that plaintiffs have established as a matter of law that the highway ditch constitutes "waters of the United States" or that defendant's discharge constituted "fill material", I recommend that their motion for summary judgment on their first cause of action be DENIED.

C. **Plaintiffs' Second Cause of Action (Violation of the RCRA)**

Following oral argument, I requested plaintiffs to address in their post-argument briefs "whether they can maintain their RCRA claim in light of their companion CWA claim arising from the same alleged discharge of fill materials". July 2, 2009 Text Order [61] (citing authorities).

In response, plaintiffs admit that "that, upon the precedents cited by the Court in its July 2, 2009 text order that the Clean Water Act enforcement mechanisms are deemed sufficient to handle such violations, and that double liability under RCRA may not be imposed. Therefore . . . dismissal without prejudice is in order." Plaintiffs' Post-Argument Brief [65], p. 2.

Accordingly, I recommend that plaintiffs' second cause of action (alleging violation of the RCRA) be DISMISSED, without prejudice.

## CONCLUSION

For these reasons, I recommend that plaintiffs' cross-motion for summary judgment [30] be DENIED, and that their second cause of action be DISMISSED, without prejudice. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the

proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.</u>

**SO ORDERED.**

DATED: September 2, 2009

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge